UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHERINE COUGHLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 19-10330-FDS |
| ) | |
| 750 WOBURN STREET OPERATING ) | |
| COMPANY, LLC d/b/a CAREONE ) | |
| WILMINGTON, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND MEMORANDUM ON MOTION TO AMEND
THE COMPLAINT AND MOTION TO REMAND**

**SAYLOR, J.**

This is a claim for unpaid wages under Massachusetts law. It was removed to this Court on the basis of diversity of citizenship. Plaintiff Katherine Coughlin has filed a motion to amend the complaint to add claims of disability and age discrimination, and to add a non-diverse party. Plaintiff has also filed a motion to remand. Because the motion to remand relies entirely on the success of the motion to amend, the motions will be considered together.

**I.    Background**

    **A.    Factual Background**

Katherine Coughlin is a 65-year-old resident of Massachusetts. (Proposed Am. Compl. ¶¶ 1, 14). From 2013 to 2018, she was employed as a physical-therapy assistant by defendant 750 Woburn Street Operating Company, LLC. (*Id.* ¶¶ 4, 36).[1]

---

[1] None of the members of the LLC are citizens of Massachusetts. It appears that defendant does business under the name "CareOne Wilmington."

The complaint alleges that in February 2018, Coughlin and her coworkers noticed that their paychecks did not include hours that they had logged and worked. (*Id.* ¶ 8). Coughlin alleges that she complained about this to a company administrator, Jeff Crowley, and that after she complained, an audit was conducted, and she was paid "for all hours that she had logged." (*Id.* ¶¶ 10).

Coughlin alleges, however, that she was still not paid for working through her 30-minute lunch breaks. (*Id.* ¶ 11). In addition, she alleges that because her supervisors encouraged her not to work overtime, she logged out to avoid accruing overtime hours, even though, on average, she continued to work approximately 45 minutes of overtime twice per month. (*Id.* ¶ 14). She alleges that she was not paid for the overtime work she performed. (*Id.* ¶ 11).

In March 2018, Kathy Diorio, the Director of Rehabilitation of 750 Woburn, became Coughlin's supervisor. (*Id.* ¶ 15). Coughlin alleges that Diorio "discriminated against [her] on the basis of her age" by "treat[ing] [her] worse than the younger" physical-therapy assistants. (*Id.* ¶ 15-17). Specifically, she alleges "[f]or example" that Diorio assigned her to work with the "more difficult patients, such as the heavier patients and patients who exhibited difficult behavior," even though she "would say" that her "back [was] killing [her]." (*Id.* ¶ 17-18).[2] In addition, she alleges that Diorio was "kinder to the younger" physical-therapy assistants and answered their questions while she ignored both Coughlin's questions and her "suggestions regarding patients." (*Id.* ¶ 19-20).

Coughlin alleges that on August 15, 2018, she complained to "Melissa," her Area Regional Manager, about her case load. (*Id.* ¶ 21). She allegedly told Melissa that she was

---

[2] There is no allegation that Coughlin suffered chronic or disabling back pain.

"being assigned to [the] heaviest and most difficult patients" and "patients she had never seen before on days that they had a family conference or treatment plan due." (*Id.*). Melissa allegedly told Coughlin that "she realized [her] complaints were legitimate" and that "things will change." (*Id.* ¶ 22).

Coughlin contends that she "suffers from migraines with aura, which can cause blurred vision." (*Id.* ¶ 29; *see* ¶ 14). On August 21, 2018, Coughlin came to work feeling ill. (*Id.* ¶ 23). At approximately 12:30 p.m., as she was filling out documentation on her computer, she put her head down on a tray table after becoming dizzy and faint. (*Id.* ¶ 24). While her head was down, two other employees, Amy and Corey, came in the room and stated that Coughlin was "sleeping." (*Id.* ¶ 26). Coughlin alleges that she immediately told Corey and Amy that she felt sick, and Amy asked if Coughlin needed to go home. (*Id.* ¶ 27). Coughlin responded that she would "see if her migraine passed, as she knew they were busy that day." (*Id.*).

Once Coughlin completed her documentation, which had taken her longer than usual due to her headache, Amy met her in the hallway and informed her that she was going to Crowley's office. (*Id.* ¶ 30). Crowley allegedly told Coughlin that "it had been reported to him that she was sleeping during her shift" and that he was sending her home so that an investigation could be conducted. (*Id.* ¶¶ 31, 33). Coughlin alleges that she told Crowley she had not been sleeping, but that she had put her head down because she was "suffering from a migraine and felt dizzy." (*Id.* ¶ 32).

On August 27, 2018, Crowley called Coughlin and told her to come to his office. (*Id.* ¶ 34). Coughlin then met with Crowley and the Director of Nurses, Carol Manaysian. (*Id.*). At that meeting, Crowley allegedly told her that he had to fire two aides "a few weeks ago for

3

sleeping" and would "have to follow the same protocol" for Coughlin. (*Id.* ¶ 35). She was then terminated, effective August 21, 2018. (*Id.* ¶ 36). The complaint alleges that the company "failed to engage in the interactive process" with her "regarding her suffering from migraines." (*Id.* ¶ 37).

B.  **Procedural History**

On October 29, 2018, Coughlin filed a complaint in Middlesex Superior Court. (Compl. ¶ 1). The complaint named "Care One Management, Inc. and Kathy Diorio" as defendants and brought claims under the Massachusetts Wage Act for unpaid wages (for the lunch breaks) and unpaid overtime wages (for the hours worked above 40 per week). (*Id.* ¶¶ 16, 19).

On October 31, 2018, Coughlin filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD"). (Mot. to Am., Ex. 1 at 2). The charge alleged that CareOne and Kathy Diorio had discriminated against her due to her age and her disability. (*Id.*). The alleged disability was that she "suffers from migraines." (*Id.* at 3).

On November 28, 2018, 750 Woburn's attorney, Joshua Nadreau, e-mailed Coughlin's attorney, Emily Boney, and advised that (1) instead of either CareOne or Diorio, Coughlin's true employer was "750 Woburn Street Operating Company, LLC" and (2) that Diorio could not be held individually liable under the Wage Act. (Opp. to Mot. to Am., Ex. A at 10-11). After various other e-mails, and an apparent phone message, Nadreau sent Boney an e-mail stating that 750 Woburn was "unable to agree that it would not seek removal should [Diorio] be dismissed." (*Id.* at 4).[3]

---

[3] In its opposition to the motion to amend, 750 Woburn contends that Coughlin "refused to withdraw the complaint or amend it to the correct employer unless 750 Woburn agreed not to remove the action to this Court." (Opp. to Mot. to Am. at 2).

On January 28, 2019, Coughlin filed an amended complaint that named only 750 Woburn as a defendant. (State Record at 15).[4] The amended complaint asserted the same wage claims as the original complaint. (*Id.* at 16).

On January 31, 2019, Coughlin's attorney, John Davis, asked to withdraw her complaint with the MCAD, stating that she "wish[ed] to file a private right of action in civil court." (Mot. to Am., Ex. 1 at 2). Davis sent a letter with the withdrawal request that asked the MCAD to "note that this letter constitutes a formal Private Right of Action request," and to "grant us a PRA at your earliest convenience." (*Id.* at 3).

On February 21, 2019, 750 Woburn removed the case to this Court. On March 11, 2019, the MCAD sent Coughlin a letter stating that her complaint before the Commission had been dismissed. (*Id.* at 1).

On March 25, 2019, Coughlin filed a motion to amend the complaint. Coughlin seeks to add two claims for disability and age discrimination under Mass. Gen. Laws. ch. 151B, and seeks to add Kathy Diorio as a defendant. On the same day, Coughlin filed a motion to remand the case to state court.

## II.     Analysis

### A.     Motion to Amend the Complaint

Because the motion to remand relies entirely on the success of the motion to amend, the Court will consider the motion to amend first.

---

[4] 750 Woburn contends that CareOne and Diorio filed motions to dismiss the original complaint on January 16, 2019. (Opp. to Mot. to Am. at 2). The docket filed as part of the state-court record in this case does not list any motion to dismiss as having been filed. (State Record at 6). An e-mail sent from Boney to Nadreau on January 25, 2019, however, states that an amended complaint was filed and asks Nadreau to "confirm that you will withdraw your Motions to Dismiss." (Opp. to Mot. to Am., Ex. B).

5

Under Fed. R. Civ. P. 15(a), a party may amend a pleading without leave of court in certain relatively narrow circumstances. "In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Nonetheless, amendments may be denied on the basis of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In determining whether to grant a motion to amend, the court must examine the totality of the circumstances and "exercise its informed discretion in constructing a balance of pertinent considerations." *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006).

Coughlin has not filed a memorandum with her motion to amend the complaint, nor a proposed amended complaint. Instead, as part of her motion, she contends simply that the MCAD granted her a "private right of action to file her age and disability discrimination claims in court" on March 11, 2019. She also contends that the remainder of her complaint will not change, that defendants will not be prejudiced by the amended complaint, and that because the "case is in its infancy," "there will be no inconvenience to the parties." (Mot. to Am. at 3).

750 Woburn makes essentially three contentions as to why the motion to amend should be denied.

### 1. **Futility**

First, 750 Woburn contends that the amendment would be futile. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."

*Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). The court reviews a proposed amended complaint for futility under the "standard [that] applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." *Adorno v. Crowley Towing And Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006).

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

### a. Age Discrimination

To prevail on a claim of age discrimination under ch. 151B, an employee must prove four elements: "membership in a protected class, harm, discriminatory animus, and causation." *Sullivan v. Liberty Mut. Co.*, 444 Mass. 34, 39 (2005). "Where an employer discriminates against an employee but the discriminatory act falls short of being an 'adverse employment action,'" the statute "affords the employee no remedy for the discrimination." *Yee v. Massachusetts State Police*, 418 Mass. 290, 296 (2019).

There appears to be no dispute as to the first element: at 65 years old, Coughlin clearly qualifies as a member of a protected class for purposes of the statute.

7

As to the second element, the amended complaint appears to allege different "adverse employment actions" on behalf of 750 Woburn generally and Diorio individually.

As to 750 Woburn, its firing of Coughlin, performed by the company's administrator, Jeff Crowley, certainly qualifies as an "adverse employment action."

As to Diorio individually, however, the amended complaint does not appear to allege that she was involved in any way with Coughlin's firing; rather, it alleges that she took other actions against Coughlin, such as assigning her to work with the more difficult patients and dismissing and ignoring her questions and suggestions, things Diorio allegedly did not do to younger colleagues.

750 Woburn contends that Diorio's actions do not qualify as "adverse employment actions." Under the statute, an adverse employment action must be a "change in working conditions that materially disadvantages" the employee. *MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662 (1996). Adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." *Hernandez-Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998).

750 Woburn appears to contend that Diorio's actions led to mere subjective feelings of disappointment and disillusionment and did not cause any objective disadvantage to Coughlin. However, taking the allegations in the amended complaint as true, Diorio's actions—at least her alleged action of assigning Coughlin the most difficult patients—appear to qualify as adverse employment actions. The amended complaint therefore satisfies the second element.

Next, 750 Woburn contends that the amended complaint does not satisfy the pleading standards as to the third and fourth elements, discriminatory animus and causation.

The amended complaint does not appear to contain any allegations of direct evidence that either Diorio or the company in general acted with a discriminatory animus or that animus caused any adverse employment action. But because "direct evidence of those elements (discriminatory animus and causation) rarely exists," a plaintiff is permitted to establish them by "indirect or circumstantial evidence." *Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 39-40 (2005).[5]

In *Sullivan*, the Supreme Judicial Court detailed the standard that a plaintiff who alleges a discriminatory termination must meet in order to prove such an allegation without direct evidence of discrimination. 444 Mass. at 40-44. In so doing, the court described what constitutes a *prima facie* showing of discrimination through indirect evidence: "Generally, a plaintiff who is terminated from her position establishes a *prima facie* case of discrimination by producing evidence that she is a member of a class protected by [ch.] 151B; she performed her job at an acceptable level; she was terminated; and her employer sought to fill her position by hiring another individual with qualifications similar to hers." *Id.* at 41. The court went on to clarify that where an employer does not replace the terminated employee—for example, in the context of a "reduction in force"—a plaintiff "may satisfy the fourth element of her *prima facie*

---

[5] Although Coughlin "need not plead facts sufficient to establish a *prima facie* case," "the elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013).

9

case by producing some evidence that her layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination." *Id.* at 45.

Here, the amended complaint pleads sufficient facts to establish the first and third elements of a *prima facie* age discrimination claim. As discussed above, Coughlin was clearly a member of a protected class (based on her age), and she was clearly terminated by 750 Woburn.

Whether the amended complaint establishes the second element — that Coughlin "performed her job at an acceptable level"—is less clear. At this stage, however, the allegation that a supervisor listened to Coughlin's complaints, and allegedly responded that she "realized . . . the complaints were legitimate and told Coughlin 'things will change,'" together with the inference that she was otherwise performing her job at a satisfactory level, suffices to establish a plausible conclusion that Coughlin's work performance was acceptable.

Finally, as to the fourth element, the amended complaint is silent as to whether the company replaced Coughlin after firing her. Accordingly, the Court must consider whether the amended complaint plausibly alleges that her layoff "occurred in circumstances that would raise a reasonable inference of unlawful discrimination." *Id.*

Taking the amended complaint's allegations as true, the circumstances alleged raise the required inference, if barely so. If, as Coughlin contends, she was not sleeping on August 21, an inference could plausibly be drawn that the company had acted with discriminatory animus and had used the sleeping allegation as a cover.

The analysis as to whether Diorio herself acted with the required discriminatory animus, and whether that animus caused Coughlin's harm, is of course different than the analysis as to the company generally. But under the principles set out in *Sullivan*, the amended complaint's

allegations suffice to make out a *prima facie* case against Diorio individually as well. Because Diorio's actions did not include terminating Coughlin, the *Sullivan* framework does not apply as easily as it does to the company in general. But, in any event, applying the principles of *Sullivan* leads to the conclusion that the amended complaint has made a *prima facie* case against Diorio personally.

The first three elements of the *prima facie* case against Diorio are the same as those against the company, and thus are satisfied. And as to the fourth element, although, again, Diorio's actions did not include a termination, the circumstances surrounding those actions also give rise to a reasonable inference of unlawful discrimination. Arguably, at least, the inference raised as to Diorio is stronger than that against the company, because the actions Diorio allegedly took against Coughlin—assigning her the more difficult clients, and ignoring her questions and suggestions—are directly contrasted by the favorable way she treated Coughlin's younger colleagues.

Accordingly, the amended complaint—construed charitably—states a plausible claim of age discrimination against both the company in general and Diorio individually. The amended complaint is therefore not futile as to these claims. Whether those claims could survive summary judgment is a question for another day.

        **b.**     **Disability Discrimination**

The allegations of discrimination on the basis of handicap are even more problematic. To establish a *prima facie* case for employment discrimination on the basis of handicap, "the plaintiff must show that she was terminated, that she is 'handicapped,' that she is a 'qualified handicapped person,' and that she was terminated because of her handicap." *Russell v. Cooley*

*Dickinson Hosp., Inc.*, 437 Mass. 443, 449 (2002).  Under the statute, a handicap is defined to mean "(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment." *Ayanna v. Dechert LLP*, 840 F. Supp. 2d 453 (D. Mass. 2012) (quoting Mass Gen. Laws. ch. 151B, § 1(17)).

Here, the proposed amended complaint alleges only that Coughlin "suffers from migraines with aura, which causes blurred vision." (Proposed Am. Compl. ¶ 29).  And although Coughlin alleges that she experienced a migraine on August 21, 2018, the complaint does not specifically allege that her migraines are an "impairment" that "substantially limit[] one or more" of her "major life activities." (*Id.*).  Nor are there any allegations that she has a record of having such an impairment, or that she was regarded as having it.  Indeed, there is no direct allegation that the company was even aware that she suffered from periodic migraines (as opposed to a single isolated episode).

Nonetheless, it could be reasonably inferred that repeated migraines would likely qualify as an impairment that substantially limits one or more major life activities.  And while the proposed amended complaint does not allege that she ever informed the company that she had repeated migraines, it does allege that the company "failed to engage in the interactive process" with her "regarding her suffering from migraines." (Proposed Am. Compl. ¶ 37).  From that, it could be plausibly inferred that she herself attempted to engage in that process, which by definition would have involved advising the company of her condition.  It could also be plausibly inferred that she could perform the requirements of the job with a reasonable accommodation.  The underlying facts may well be quite different, but at this stage, the allegations in the proposed

amended complaint are enough to defeat the claim of "futility."

As to the company, therefore, the proposed complaint can be plausibly read to allege a valid claim of disability discrimination—although to be sure, the allegations survive dismissal by a razor-thin margin. As to Diorio, however, there are no plausible allegations of disability discrimination, and to that extent, the proposed amendment will not be allowed. Again, the Court expresses no opinion as to whether the claim can survive summary judgment

### 2. Alleged Fraudulent Joinder

750 Woburn further contends that the Court should use its discretion to deny the joinder of Diorio as a defendant. Essentially, 750 Woburn contends that Coughlin has named Diorio as a defendant only to deprive the Court of subject-matter jurisdiction. It points to that Coughlin's actions of "improperly nam[ing] Diorio as a defendant in the original State Court wage and hour suit" and "refus[ing] to drop her from the suit unless 750 Woburn agreed not to remove the case to this Court" as evidence that her only interest in adding Diorio is to return to the state court.

That contention is not completely without merit, and certainly there is reason to question why Diorio is only now being added to the case. But, at least at this stage, the Court cannot conclude that Coughlin has added Diorio as a defendant *only* to destroy federal jurisdiction. The fact that Coughlin raised the claims of discrimination by Diorio to the MCAD in October 2018, and sought permission from the MCAD to file suit against Diorio in January 2019, before 750 Woburn removed the case to this court in February 2019, creates at least some doubt that Diorio has been added only for an improper purpose. Accordingly, the Court will not use its discretion to deny the motion to amend.

### 3. Failure to Comply with Local Rules

Finally, 750 Woburn contends that the Court should deny the motion to amend because Coughlin's counsel failed to comply with Local Rules 7.1 and 15.1.

It is true, as 750 Woburn points out, that courts may deny motions to amend based on a plaintiff's failure to comply with local rules. *See Martins v. 3PD, Inc.*, 2013 WL 1320454, at *4 (D. Mass. Mar. 28, 2013). But non-compliance with local rules is not a ground for denying motions to amend in every instance, and here, under the circumstances, although not condoning the lack of compliance, the Court will not deny the motion on that ground.

Accordingly, the motion to amend will be granted as to the claims for age discrimination against both defendants, and disability discrimination against 750 Woburn, but denied as to the claim of disability discrimination against Diorio.

### B. Motion to Remand

Coughlin has also filed a motion to remand, contending that with the addition of Diorio as a defendant, diversity of citizenship is destroyed, and subject-matter jurisdiction no longer exists.[6]

The case presents no federal question and was removed to this Court solely on the basis of diversity. Now, however, because Diorio, like Coughlin, is a Massachusetts resident, her addition as a defendant destroys complete diversity. Accordingly, this court is without subject-matter jurisdiction over this matter.

Accordingly, the case will be remanded due to the Court's lack of subject-matter

---

[6] In opposition to Coughlin's motion, 750 Woburn again alleges that Coughlin's counsel has failed to comply with the local rules. And although the Court is troubled by this lack of compliance, such misbehavior does not change the fact that the Court is now without subject-matter jurisdiction.

jurisdiction.

## III.  Conclusion

For the foregoing reasons, the motion to amend the complaint is GRANTED as to the claim against both defendants alleging age discrimination and the claim against 750 Woburn Street Operating Company, LLC alleging disability discrimination, and is otherwise DENIED. Plaintiff's motion to remand is GRANTED.

**So Ordered.**

|  |  |
|---|---|
| Dated:  July 8, 2019 | /s/ F. Dennis Saylor<br>F. Dennis Saylor IV<br>United States District Judge |